# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TONYA M. SHORT,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:12-cv-94
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's statement of errors (Doc. 11), the Commissioner's response in

opposition (Doc. 14), and plaintiff's reply memorandum. (Doc. 17).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in September 2007, alleging disability since

July 1, 2007[1], due to asthma, depression, diabetes, and high blood pressure. (Tr. 187). Plaintiff's

applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested

and was granted a de novo hearing before Administrative Law Judge (ALJ) Larry A. Temin.

Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On September

23, 2010, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's

request for review by the Appeals Council was denied, making the decision of the ALJ the final

administrative decision of the Commissioner.

---

[1]Plaintiff initially alleged an onset date of disability of October 10, 2006. This was subsequently amended to July 1,
2007. (Tr. 147-48).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.

2004).  Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the

national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2011.

> 2. The [plaintiff] has not engaged in substantial gainful activity since July 1, 2007, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

> 3. The [plaintiff] has the following severe impairments: obesity; asthma/allergies; status post left thoracotomy with decertification of lung and pleura; diabetes mellitus; an affective disorder; and an anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

> 5. After careful consideration of the entire record, the undersigned finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).  Specifically, the [plaintiff] can perform work activities except as follows: She can lift/carry up to 20 pounds occasionally and 10 pounds frequently.  She can stand and/or walk for a total of 6 hours in an 8-hour work day, and she can sit for a total of 6 hours in an 8-hour workday.  She can only occasionally stoop, kneel, crouch, and climb ramps and stairs.  She should not crawl, climb ladders, ropes or scaffolds or work at unprotected heights or around hazardous machinery.  She cannot work with concentrated exposure to

3

fumes, noxious odors, dusts or gases. Mentally, the claimant is able to perform only simple, routine repetitive tasks. She is able to remember and carry out only short and simple instructions. She cannot interact with the general public, and she cannot interact with coworkers or supervisors more than occasionally. The [plaintiff's] job should not require more than ordinary and routine changes in work setting or duties. She is able to make only simple work-related decisions.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

7. The [plaintiff] was born [i]n 1979 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963)

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(Tr. 13-21).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.

Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*,

478 F.3d 742, 745-46 (6th Cir. 2007).

---

[2]Plaintiff's past relevant work was as an office cleaner, trash truck driver, daycare worker, crew manager, fast food worker, emissions tester, receptionist, and telemarketer.

4

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004) (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

Plaintiff assigns three errors in this case: (1) the factual and legal basis for the RFC finding is not set forth with "such clarity as to be understandable" as required by *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), and does not meet the narrative discussion requirement of

Social Security Ruling 96-8p[3]; (2) the ALJ improperly weighed the medical opinions of record; and (3) the ALJ's credibility analysis is unsupported by the evidence.

### 1. The clarity of the ALJ's RFC decision.

Plaintiff's first assignment of error asserts the ALJ's RFC determination lacks sufficient specificity and violates the principle enunciated in *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943), which requires administrative determinations to clearly disclose the grounds upon which the decision is based. Plaintiff argues "there is no particular evidence specified that the ALJ relies upon to support his RFC, but takes refuge in murky references to 'significant' weight given to non-examining two plus year old mental and physical evaluations by non-examiners while disparaging all treating and examining medical source opinions contemporaneous with the entire alleged period of disability." (Doc. 11 at 11-12). In support of his argument, plaintiff cites to the ALJ's "own" evaluation of the medical evidence relating to plaintiff's pulmonary function impairment; the ALJ's failure to consider the June 2010 report of plaintiff's treating physician, Jamie Evans, M.D.; the ALJ's assessment of plaintiff's diabetic neuropathy; the ALJ's reliance on a treating physician's comment that she was "not comfortable" endorsing plaintiff's long term disability; and the ALJ's assessment of the reasons given by a treating physician for plaintiff's

---

[3]Social Security Ruling 96-8p provides in relevant part:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

noncompliance with taking prescribed medication. (Doc. 11 at 8-11). Rather than addressing the alleged lack of clarity of the ALJ's decision, plaintiff's arguments and citations to the record are directed at attacking the underlying reasons given by the ALJ and the evidentiary support (or lack thereof) for the ALJ's RFC decision. The Court finds no error under *Chenery*.

The ALJ's decision is sufficiently specific to allow this Court to perform its judicial review function. In assessing plaintiff's RFC, the ALJ's decision sets forth in detail his consideration of plaintiff's allegations of pain and limitations; plaintiff's activities of daily living and social functioning; plaintiff's pulmonary function, diabetes, neuropathy, and mental impairments and the alleged limitations resulting from these impairments; plaintiff's compliance with prescription medications; and the opinion evidence from the state agency consultants and plaintiff's treating physicians. (Tr. 16-21). The undersigned is able to reasonably discern the evidentiary basis for the ALJ's decision to limit plaintiff to a range of light work with certain non-exertional restrictions. *See Motor Vehicle Mfrs. Assn. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (reviewing court on judicial review "may not supply a reasoned basis for the agency's action that the agency itself has not given," but may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.") (quoting, respectively, *Chenery*, 332 U.S. at 196; and *Bowman Transp. Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)). Nevertheless, whether the ALJ's stated reasons for his RFC decision are supported by substantial evidence and whether the ALJ applied the correct legal standards are different questions altogether that the Court must address.

Plaintiff also cites to *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010) (Doc. 17 at 2), in which the Seventh Circuit held that boilerplate language similar to that used by the ALJ in

7

determining plaintiff's RFC was not sufficiently detailed to provide the reviewing court with the grounds upon which the RFC determination was based. *Parker* is distinguishable from the instant case in that the ALJs in the *Parker* case "failed to mention highly pertinent evidence [and/or] fail[ed] to build a logical bridge between the facts of the case and the outcome." *Id.* at 921. The ALJs' administrative determinations were overturned not for the use of boilerplate language, but because, in addition, the decisions were fundamentally flawed: one ALJ failed to properly consider the cumulative effects of impairments and the other completely ignored pertinent evidence contained in a treating physician's notes. *Id.* at 923-25. Whether these deficiencies are present in the instant case are best determined in connection with plaintiff's second and third assignments of error. While both ALJ Temin and the ALJs in the *Parker* case used similar, boilerplate language, here the boilerplate language is accompanied by a detailed basis for the RFC determination and a narrative discussion of the medical and other evidence in support thereof in compliance with Social Security Ruling 96–8p. There is a sufficient record upon which this Court can determine whether or not the ALJ's determination is supported by substantial evidence. As such, the Court turns to plaintiff's other assignments of error.

### 2. The ALJ's weighing of the medical opinions.

Plaintiff's second assignment of error asserts the ALJ erred in weighing the medical opinions of record and, as a result, the ALJ's conclusion about plaintiff's RFC is not supported by substantial evidence. Plaintiff contends the ALJ failed to give appropriate weight to the medical opinions of plaintiff's treating physicians on her mental impairments and failed to give "good reasons" for doing so; failed to properly consider the RFC opinion of the consultative examining psychologist, Jeanne Spadafora, Ph.D.; and improperly gave significant weight to the

8

opinions of the non-examining state agency physicians and psychologists who were without all the medical evidence of record. Plaintiff's arguments are well-taken.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once," *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985), or those of a non-examining medical consultant who merely reviews the medical records. *Shelman v. Heckler,* 821 F.2d 316, 321 (6th Cir. 1987). The treating physician rule mandates that the ALJ "will" give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing former 20 C.F.R. § 404.1527(d)(2)).[4] If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6) in determining the weight to afford the opinion. *See Wilson*, 378 F.3d at 544. These factors are the length, nature and extent of the treatment relationship and the frequency of examination, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, the medical specialty of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6); 416.927(c)(3)-(6); *Wilson*, 378 F.3d at 544. The Social Security regulations require an ALJ to "give good reasons" for not giving weight to a treating physician's opinion, *Wilson*, 378 F.3d at

---

[4]Title 20 C.F.R. §§ 404.1527 and 416.927 have been amended and renumbered. The provisions governing the weight to be afforded a medical opinion were previously found at §§ 404.1527(d) and 416.927(d) and are now found at subsection (c).

544 (citing former 20 C.F.R. § 404.1527(d)(2)) and those reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers v. Comm'r Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (internal quotations and citations omitted).

Dr. Laurie Carrier, a doctor of psychiatry and family medicine, began treating plaintiff with weekly psychotherapy and medication management on October 25, 2007. (Tr. 357, 789). In a December 21, 2007 report, Dr. Carrier stated plaintiff was diagnosed with bipolar affective disorder. (Tr. 359). In terms of significant clinical mental status abnormalities, Dr. Carrier reported that plaintiff has a mood disorder with increased irritability, depression and difficulty concentrating, and that plaintiff "is unable to 'mentally' take her prescribed medicines (for health and mental reasons) because of abnormal thought processes." (Tr. 358). She also reported that plaintiff has decreased concentration and an inability to comprehend that she will not become addicted to prescribed medicines despite education. (Tr. 358). Dr. Carrier noted that when plaintiff is very depressed or agitated, her self-care and hygiene decreases. *Id.* In terms of social interactions, plaintiff becomes "very irritable and hostile quickly" and "feels she has no warning prior to these episodes." *Id.* Therapy included use of behavioral techniques to prevent episodes of outbursts, irritability and "irrationality" and working on plaintiff's "mindset regarding medications as pt [patient] is not currently taking but meds would be helpful with these episodes." (Tr. 358-59). Dr. Carrier stated plaintiff has a low threshold to tolerate stress in the workplace and in a daily routine. (Tr. 359).

That same month, Dr. Carrier completed a mental functional capacity assessment that rated plaintiff as markedly limited in her ability to carry out very short and simple or detailed

10

instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (Tr. 795).

In September 2008, Dr. Carrier completed another mental functional capacity assessment that rated plaintiff as markedly limited in most of the same areas previously documented. Plaintiff was also markedly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to maintain socially appropriate behavior; and to adhere to basic standards of neatness and cleanliness.  (Tr. 792).

In June 2009, Dr. Carrier reported that she had been treating plaintiff for two years starting in the summer of 2007 and that her depression and anxiety have been considerably worse since the death of her father in December 2008.  (Tr. 789).  Dr. Carrier opined that plaintiff's depression was disabling, affecting her concentration, energy levels, sleep, appetite and physical functioning.  *Id.*  Dr. Carrier reported that plaintiff had engaged in weekly psychotherapy and medication management since October 25, 2007 and that her health status was deteriorating.  *Id.* On mental status exam, plaintiff's appearance was unkempt and tearful, her mood was depressed, her affect was congruent, and her insight and judgment were fair.  *Id.*  Dr. Carrier opined that the severity of plaintiff's depression and anxiety resulted in the disruption of concentration, focus, and the ability to work with other people, and that plaintiff "can not hold a job at this time."  (Tr. 790).

11

Plaintiff began treating with Dr. Jamie Evans, a doctor of psychiatry and family medicine and colleague of Dr. Carrier, in June 2009. (Tr. 756). In December 2009, Dr. Evans opined that plaintiff was markedly limited in her ability to remember locations and work-like procedures; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work place. (Tr. 788).

In June 2010, Dr. Evans reported that plaintiff's long standing history of depression and anxiety dating back to October 2007 and severe, persistent asthma have limited plaintiff's ability to physically function. (Tr. 785). Dr. Evans reported psychiatric findings of depressed and labile mood (crying to angry), anxiousness, poor concentration and memory, and disheveled and unkempt appearance. *Id.* Dr. Evans stated that plaintiff required regular follow-up on a weekly to bi-weekly basis to gain control of her multiple medical and psychiatric conditions. *Id.*

In a letter dated June 8, 2010, Dr. Evans stated:

I have been evaluating and treating Ms. Tonya Short for one year – previously she was treated by my colleague Dr. Laurie Carrier. She is currently suffering from multiple medical conditions, including severe persistent asthma, chronic pain related to complications of pneumonia and asthma in 2007, diabetes mellitus type 2, depression, and anxiety.

With regard to her asthma, it is severe persistent and has in the past required her multiple hospitalizations plus a stay in the intensive care unit with intubation in 2007 (secondary to pneumonia which required chest tube placement). Her asthma has been poorly controlled despite all efforts to improve it including use of steroid

12

inhalers for maintenance, beta-agonists for rescue in acute flare ups, and prolonged oral steroids. She has recently completed a one month steroid taper with Prednisone which was unsuccessful in treating her symptoms. The resistance of her medical condition to our treatment efforts has led us to refer her to a pulmonary specialist to assist with her care, as I am suspicious for another possible underlying pulmonary condition.

Ms. Short also suffers from both depression and significant anxiety which has not responded optimally to treatment. Much of these problems began following the aforementioned hospitalization which also caused significant chronic pain. She has suffered from picking due to her anxiety, which has caused several skin infections due to this. Her therapy is limited in use of certain medications (i.e., beta blockers) due to probable worsening of her already severe asthma symptoms. Ms. Short's depression has been difficult to control also due to co-morbid poorly controlled diabetes mellitus type 2 (her last measured blood glucose on laboratory studies was >500). . . .

Ms. Short's asthma, diabetes, and chronic pain along with her psychiatric illness and lack of financial resources to support optimal health maintenance have caused significant impairment in occupational and social functioning. It is not anticipated that she will recover from these conditions considering her lack of progress despite my considerable effort throughout the past year (and Dr. Carrier's prior efforts) to help control these problems. Based upon these findings, Ms. Short's condition will continue to deteriorate further with worsening of her physical condition [illegible] worsening neuropathy and chronic pain – which in turn is expected to worsen her psychological status. Unfortunately, the overall picture does not appear to lead to Ms. Short returning to her pre-morbid level of functioning, including resuming employment.

(Tr. 784).

In the instant case, the ALJ gave less weight to the opinions of plaintiff's treating physicians, Drs. Carrier and Evans, than to the non-examining state agency consultant whose December 2007 opinion was given significant weight. The ALJ determined that the opinions of Drs. Evans and Carrier were only entitled to little weight because Dr. Carrier examined plaintiff only three times (Tr. 20, citing Tr. 761, 764, 767) and Dr. Evans examined plaintiff only two times (Tr. 20, citing Tr. 751, 756); there are no mental examinations or treatment records supporting the limitations imposed by the treating doctors (Tr. 19, 20); and neither doctor

13

"satisfactorily" addressed plaintiff's alleged noncompliance with taking prescription medications. (Tr. 21).

The ALJ's decision is premised on factual errors and a review of an incomplete record, both of which compel a finding that his decision is not supported by substantial evidence. The ALJ discounted Dr. Carrier's opinion based on the infrequency of treatment, suggesting that Dr. Carrier did not have the longitudinal picture of plaintiff's mental impairments to assess the limitations she found. Contrary to the ALJ's finding that Dr. Carrier only examined plaintiff three times, the record evidence shows that Dr. Carrier engaged plaintiff in weekly psychotherapy and medication management since October 25, 2007 for approximately two years. (Tr. 789). The ALJ's decision acknowledges plaintiff's visits with Dr. Carrier at the University Family Physician's office in 2009, but ignores the records from 2007 when Dr. Carrier began treating plaintiff (Tr. 684-85), as well as various references to plaintiff's counseling with Dr. Carrier throughout the record. (Tr. 689, 682, 680, 668-69). Significantly, when Dr. Carrier first examined plaintiff in October 2007, she stated, "Pt would highly benefit from weekly psychotherapy (CBT), will refer to central clinic for weekly therapy with myself where pt can have an hour appt, f/u w/PMD, Dr. Ireton as scheduled." (Tr. 685).[5] Unfortunately, the record does not reflect that any attempts were made to obtain plaintiff's counseling records from the

---

[5]The ALJ also cited to an October 4, 2007 notation by Dr. Ironton that plaintiff needed a form from the Department of Jobs and Family Services completed for long-term disability and "I am not comfortable doing this, as I expect pt to work on improving her medical conditions and get back to work. I wrote 3 mos, with the notation that her medical conditions will be lifelong, and explained this to the patient." (Tr. 689). Yet, Dr. Ironton's October 4, 2007 statement was made *before* plaintiff was diagnosed with "disorder, episodic mood NOS" and started her two-year counseling stint with Dr. Carrier on October 25, 2007. (Tr. 685; *see also* Tr. 689).

14

Central Clinic, an outpatient mental health agency in Hamilton and Butler Counties, Ohio,[6] despite plaintiff's report to the Social Security Administration that she received counseling and medication therapies from Dr. Carrier at the Central Clinic (Tr. 247), plaintiff's report to Dr. Spadafora that she was treated at the Central Clinic (Tr. 362), and the references to counseling with Dr. Carrier contained in the family practice records.[7] In the absence of consideration of the records from the Central Clinic where plaintiff actually received treatment for a two year period, as well as the 2007 records from the family practice office the ALJ ignored, the ALJ's justifications for discounting Dr. Carrier's opinion – because of alleged infrequent treatment and lack of supporting treatment records – are not "good reasons" under *Wilson* for discounting Dr. Carrier's opinion. *See Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) ("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."). Thus, the ALJ's decision discounting Dr. Carrier's opinions based on alleged infrequency of treatment and the lack of supporting treatment records is without substantial support in the record.[8]

The ALJ also erred when he gave less weight to Dr. Evans' December 2009 opinion based on the incorrect assumption she treated plaintiff only twice. (Tr. 20, citing Tr. 751, 756).

---

[6]*See* http://www.centralclinic.org/ (last visited on January 26, 2013). Plaintiff advised the Social Security Administration that she received treatment at the Central Clinic on Burnet Avenue in Cincinnati, Ohio in addition to treatment at the University Family Physicians office in Forest Park, Ohio. (Tr. 247-48).

[7]While the records from the University Family Physicians office in Forest Park, Ohio were obtained, where plaintiff sometimes saw Dr. Carrier in addition to numerous other physicians in the practice, there is no indication her records from Central Clinic were requested or obtained.

[8]To the extent the Commissioner argues the ALJ was justified in giving Dr. Carrier's opinion less weight because she was a resident physician, the Commissioner has not directed the Court's attention to any regulation or case law indicating that this is a valid reason for discounting a treating physician's opinion. In any event, the clinical notes completed by Dr. Carrier contain an acknowledgment from a preceptor noting discussion and agreement with Dr. Carrier's findings and plan. Moreover, it seems incongruous to give less weight to a physician like Dr. Carrier with a several year history of treatment based on residency status, yet significant weight to agency psychologist who never examined plaintiff and who only had a limited portion of the medical evidence.

The record reflects that in addition to treating plaintiff in September 2009 (Tr. 751) and June

2009 (Tr. 756), which the ALJ acknowledged, Dr. Evans also treated plaintiff in October 2009

(Tr. 856-860), December 2009 (Tr. 851-855), January 2010 (Tr. 832-836), March 2010 (Tr. 827-

831), April 2010 (Tr. 824-826), June 2010 (Tr. 819-823), and July 2010 (Tr. 809-818). Dr.

Evans' chart also includes records from the emergency department in January 2010 showing

plaintiff was treated for an asthma exacerbation, shortness of breath, racing thoughts, and

anxiety. (Tr. 837-840). In addition, Dr. Evans provided a detailed narrative report in June 2010

reflecting her treatment of plaintiff's multiple medical conditions and the effect of these

impairments on her occupational and social functioning (Tr. 784), which the ALJ's decision fails

to acknowledge. Because the ALJ failed to acknowledge the October 2009 through July 2010

records showing plaintiff's treatment with Dr. Evans, as well as Dr. Evans' June 2010 report, the

ALJ's decision giving less weight to Dr. Evans is without substantial support in the record.

      The ALJ also rejected the findings of the treating physicians because they failed to

"satisfactorily" address plaintiff's noncompliance with taking prescription medications. (Tr. 21).

The ALJ acknowledged Dr. Carrier's statement that plaintiff was "unable to 'mentally' take her

prescribed medicines (for health and mental reasons) because of abnormal thought processes."

(Tr. 358). The ALJ rejected this explanation, however, because "many people with mental

disorders are capable of taking medications." (Tr. 21). While that certainly may be so, the ALJ's

lay opinion in this regard is not supported by any medical opinion or evidence contradicting the

treating psychiatrist's explanation for plaintiff's lack of compliance. In fact, plaintiff's therapy in

December 2007 included use of behavioral techniques to work on plaintiff's "mindset regarding

medications as pt [patient] is not currently taking but meds would be helpful with these episodes"

(Tr. 358-59), supporting Dr. Carrier's explanation. In addition, neither the ALJ nor the Commissioner cites to instances of noncompliance with mental health medications in 2008, 2009, or 2010. This is not a good reason for discounting the treating physicians' opinions.

Further compounding these errors is the ALJ's weighing of the opinions of the consultative examiners in this case. The ALJ relied on the December 2006 consultative examination of Dr. Chiappone to conclude that plaintiff had only mild and moderate limitations in her mental functioning. (Tr. 19). The ALJ noted that Dr. Chiappone assigned a GAF score of 55[9] for plaintiff's symptoms, which suggested moderate symptoms, and a GAF of 61 for her functional level, which suggested only mild symptoms. (Tr. 19). However, Dr. Chiappone's examination occurred some seven months *before* plaintiff's amended alleged onset date of July 1, 2007, and three years before the ALJ hearing.

In contrast, the ALJ's decision is silent on the opinion of clinical psychologist Jeanne Spadafora, Ph.D., who examined plaintiff at the request of the Social Security Administration six months after plaintiff's amended alleged onset date, and who opined that plaintiff suffered from a serious impairment with a GAF rating of 41. (Tr. 366). Dr. Spadafora diagnosed Major Depressive Disorder, recurrent, severe with psychotic features and panic disorder with agoraphobia. *Id.* On mental status examination, plaintiff's affect was blunted, her mood was dejected, and her facial expressions were sad and downcast. (Tr. 362). She manifested tension and psychomotor arousal and often ruminated. (Tr. 363). Dr. Spadafora opined that plaintiff was

---

[9]A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. The DSM–IV categorizes individuals with scores of 41 to 50 as having "serious" symptoms. *Id.* at 32. Individuals with scores of 51–60 are classified as having "moderate" symptoms. *Id.*

"extremely impaired" in her ability to withstand the stress and pressure associated with day-to-day activities, and was "markedly impaired" in her ability to relate to others and to maintain attention, concentration and persistence. (Tr. 365). Yet, the ALJ's decision makes no mention of Dr. Spadafora's examination or findings, suggesting the ALJ ignored the evidence from Dr. Spadafora which showed more severe limitations in plaintiff's functioning than those found by Dr. Chiappone. The Commissioner argues that the ALJ's "oversight" was harmless. (Doc. 14 at 16). The Court disagrees because Dr. Spadafora's findings and limitations are consistent with those of plaintiff's treating doctors and lend consistency and support to their opinions on plaintiff's ability to perform work-related activities from a mental standpoint. Every medical source who examined or treated plaintiff after her amended alleged onset date found plaintiff more limited than the non-examining state agency reviewer. Where, as here, the ALJ is presented with conflicting probative evidence, he "must explain why that conflicting evidence was not credited." *Becker v. Comm'r of Soc. Sec.*, No. 1:07-cv-950, 2009 WL 483833, at *4 (S.D. Ohio Feb. 25, 2009) (citing *Fargnoli v. Halter*, 247 F.3d 34, 42 (3rd Cir. 2001); *Cotter v. Harris*, 642 F.2d 700, 705 (3rd Cir. 1981)). Otherwise, the reviewing court is unable to discern "if significant probative evidence was not credited or simply ignored." *Morris v. Sec'y of HHS*, No. 86–5875, 1988 WL 34109, at *2 (6th Cir. April 18, 1988) (citations omitted). While an ALJ need not provide a "written evaluation of every piece of testimony and evidence submitted . . . a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Id.* (citations omitted). The ALJ's failure to acknowledge Dr. Spadafora's report and to articulate any reasons for rejecting the report is reversible error.

18

The Commissioner also argues that the evidence does not establish disabling mental impairments, citing to the ALJ's findings that suggested improvement in plaintiff's functioning over time, noting plaintiff was "less depressed, less agitated/irritable" (Tr. 19, citing Tr. 681-December 2007), that her mood was generally described as "fairly stable" (Tr. 19, citing Tr. 665, May 2008, Tr. 668-April 2008), and that plaintiff reported her anxiety had "improved" in January 2010. (Tr. 19, citing Tr. 832). Yet, "improved" and "stable" are relative terms that cannot be viewed without context in assessing mental health impairments. For example, in December 2009, plaintiff reported her nerves were "out of control" and she was "picking at her skin." Her mental status exam showed she was anxious and fidgety. Plaintiff was "rescreened for bipolar affective disorder" and was found to be "grossly positive on mood disorder questionnaire." She was started on Risperdal. (Tr. 852-54). In January 2010, the date the ALJ noted "improvement," plaintiff reported she was "feeling better" and "doing less picking at her skin; Stresses are the same but seems to be a bit better on Risperdal." (Tr. 19, citing Tr. 832). While Dr. Evans noted some improvement of plaintiff's anxiety, the clinical note reflects that plaintiff's anxiety was still symptomatic. "Under the ALJ's logic, any improvement in one's mood, regardless of how small and from what level the individual improved, would defeat a claim of mental impairment. This cannot be so." *Boulis-Gasche v. Comm'r of Soc. Sec.,* 451 F. App'x 488, 494 (6th Cir. 2011). Moreover, without the Central Clinic records discussed above, there is an incomplete picture of plaintiff's functioning.

Finally, the ALJ erred by giving significant weight to the non-examining state agency psychological consultant who opined plaintiff had mild to moderate limitations and noted that plaintiff had not "even been treated for an extended period, despite her history of mental

19

problems." (Tr. 20, citing Tr. 384). However, the state agency reviewer rendered his opinions in December 2007 based on an incomplete medical record and shortly after Dr. Carrier diagnosed plaintiff with a mood disorder in October 2007. The evidence indicates that contrary to the agency reviewer's comment, plaintiff did engage in "an extended period" of treatment for her mental impairments, albeit after the consultant reviewed the record. The Court recognizes that an opinion from a non-examining source, such as a state agency consultant, may "in appropriate circumstances" be given greater weight than that of an examining or treating source. Social Security Ruling 96-6p, 1996 WL 374180, at *3. However, where, as here, much of the evidence of plaintiff's mental impairments post-dates the reviewer's opinion and the ALJ nonetheless credits the state agency reviewer's opinion, the ALJ must acknowledge that fact and provide sufficient reasons for doing so to enable the Court to engage in meaningful judicial review. *Cf. Blakley*, 581 F.3d at 409 (where ALJ credits non-examining source opinion who was without opportunity to review subsequent reports and records of consulting and treating physicians, court requires "some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not 'based on a review of a complete case record.'") (citing *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3)). The ALJ's failure to do so in this case mandates a reversal and remand for further proceedings.

### 3. The ALJ's credibility finding.

The ALJ's credibility finding similarly suffers from the ALJ's factual errors and incomplete record as explained above. In support of his credibility finding, the ALJ cited, *inter alia*, plaintiff's alleged noncompliance with medication and treatment regimens and the

20

inconsistency between plaintiff's alleged limitations and the medical evidence of record.  As the medical record upon which the ALJ relied is incomplete (in the absence of the Central Clinic records) and was in parts ignored (Dr. Spadafora's consultative examination report, Dr. Carrier's 2007 clinic notes, and Dr. Evans' June 2010 report), the ALJ's credibility finding is not supported by substantial evidence and should be reversed.  Plaintiff's credibility should be re-examined in connection with the ALJ's review of the Central Clinic records, Dr. Evans' June 2010 opinion, Dr. Spadafora's examination, Dr. Carrier's 2007 clinic notes, and any further medical evidence submitted on remand.

### III. This matter should be reversed and remanded for further proceedings.

This matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation.  Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of HHS*, 17 F.3d 171, 176 (6th Cir. 1994).  Here, all essential factual issues have not been resolved in this matter, there is evidence not considered by the ALJ, and the current record does not adequately establish plaintiff's entitlement to benefits as of her alleged onset date.  *Id.* at 176.  In addition, while Dr. Carrier identified a psychiatric basis for plaintiff's noncompliance with medications in 2007, the later records are not so clear.  Dr. Evans' June 2010 report suggests that plaintiff's periodic noncompliance with diabetic treatment may be a result of her mental impairments (Tr. 784).  On remand, the ALJ should be directed to (1) address and resolve the issue of whether plaintiff's periodic noncompliance with prescribed treatment and medication regimen is a manifestation of her mental impairments in accordance

21

with the Social Security regulations and Social Security Ruling 82-59; (2) evaluate plaintiff's

credibility and the medical source opinions of record under the legal criteria applicable under the

Social Security Regulations and Rulings and as mandated by case law; (3) obtain and review

plaintiff's mental health treatment records from the Central Clinic; and (4) review the evidence

under the required five-step sequential evaluation process to determine anew whether plaintiff

was under a disability and thus eligible for DIB and/or SSI.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further

proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).


Date: 2/1/2013

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TONYA M. SHORT,                                 Case No. 1:12-cv-94
      Plaintiff,

                                            Barrett, J.
      vs.                                      Litkovitz, M.J.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).